UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONDIGO, LLC, a Michigan limited liability
company, DOLORES MICHAELS aka
NICOLINA A. MICHAELS and
RENEE MICHAELS,

      Plaintiffs,                          Case Number: 08-10432

v.                                     DISTRICT JUDGE JOHN FEIKENS
TOWNSHIP OF RICHMOND, MICHIGAN, a  MAGISTRATE JUDGE STEVEN D. PEPE
Michigan municipal corporation, GORDON
FUERSTENAU, in his official and individual
capacities, THE FOUR TOWNSHIP CITIZENS'
COALITION, INC., a Michigan nonprofit
corporation, JARED SLANEC, KRISTYN SALANEC,
JOHN GIANNONE, SARA GIANNONE, SALVATORE
GIANNONE, NANCY GIANNONE, BILLY TRAVIS,
MARLENE TRAVIS, THOMAS MACKLEY,
PAULA MACKLEY, MICHAEL SYLVESTRY,
MICHAEL LOCK, KARLA SITEK,
ROBERT GRUCZ, LESTER SOVA, DEVON SLANEC,
ANNETTE NORMAN, ANGELA M. JOBS, JOHN REY,
JUDITH REY, LINDA GERHARD, WAYNE WHITMAN,
in his individual capacity, STEVEN MAHONEY, in his
individual capacity, TERESA SEIDEL, in her individual
capacity, MATTHEW FLETCHER, in his individual
capacity, and ANNE HOKANSON, in her individual
capacity, jointly and severally,

      Defendants.
_____

**REPORT AND RECOMMENDATION ON RICHMOND TOWNSHIP AND
GORDON FUERSTENAU'S MOTION TO DISMISS (DKT. #81)**

      This case arises from a disagreement between Plaintiffs, Rondigo LLC and Dolores and

Renee Michaels, and multiple Defendants, including Richmond Township over the use of a farm.

The property at issue is a 71.9 acre parcel of real property located in Richmond Township,

1

Macomb County, Michigan.  The property is zoned for agricultural and residential uses.
Plaintiffs have used this property as a farm and have planted and harvested crops there since
2004.  Plaintiffs' claims seem to center around alleged violations of their constitutional rights
due to a conspiracy among the Defendants.  The execution of this conspiracy supposedly
included baseless complaints about noxious smells coming from the Plaintiffs' farm and actions
taken by governmental actors to deprive them of their rights to their property.

On November 10, 2008, Defendants Richmond Township and Gordon Fuerstenau moved
pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(6) and 56(c) to dismiss Plaintiffs'
complaint (Dkt. #48).  All pre-trial matters have been referred in accordance with the authority
conferred under 28 U.S.C. § 636(b) (Dkt. #63).  For the reasons indicated below, IT IS
RECOMMENDED that Defendants' motion be GRANTED.

## I.      BACKGROUND

### A)      The Plaintiffs

The Plaintiffs are Dolores Michaels, Renee Michaels and Rondigo, LLC.  The Michaels
own and operate the approximately 72 acre Rondigo Farm located in Richmond Township.
Plaintiffs have engaged in both farming and composting activities.  The composting program
consists of yard clippings and yard waste which the Plaintiffs take from outside sources for a fee.
The compost is applied to the fields on the Rondigo farm.

### B)      The Defendants

There are roughly thirty Defendants in this case, falling into four categories:

1)      **Richmond Township Defendants**:  Richmond Township is the local municipal
government entity.  Defendant Fuerstenau is the Richmond Township supervisor.

2

2)      **Four Township Citizens' Coalition** ("FTCC"): FTCC is an organization representing individuals who live in the area of Richmond Township; the organization challenges commercial composting activities.

3)      **Homeowner Defendants**: The Homeowner Defendants allegedly made false complaints about odors emanating from Plaintiffs' property.

4)      **The State Defendants**: There are two state departments involved in this case: the Michigan Department of Agriculture ("MDA") and the Michigan Department of Environmental Quality ("MDEQ").  Plaintiffs have sued individual employees of these departments in their individual capacities.

### C)      The Township Ordinances Applicable To The Construction Of Rondigo's Roadways

At all relevant times the Township had in effect a Zoning Ordinance.  Section 4.12 of the zoning ordinance pertains to non-residential driveways.  That section provides as follows:

> A.      Non-residential driveways, entrances and exits shall be subject to approval by the Macomb County Road Commission, the Michigan Department of Transportation, where applicable, and by the Planning Commission after considering the effects on surrounding property, pedestrian and vehicular traffic and the movement of emergency vehicles.[1]

On November 9, 2005, the Township adopted Ordinance No. 02-2005, commonly referred to as the Land Development and Engineering Standards Ordinance (Engineering Ordinance).  The Township engineering ordinance at page 1, Section I(A) prohibits construction of Rondigo's roadway without first submitting plans for review and approval by the Township.  Page 7, Section II under Storm Drainage Systems, provides as follows:

---

[1] Section 4.12 of the Township's Zoning Ordinance is attached and identified as Exhibit 4 to Dkt. #81.

3

> No person shall construct, attempt to construct, repair, replace any storm drainage structure, ditch, culvert, pipe, water course or other drainage system without submitting plans as required hereunder in Section I.

Section IV of the engineering ordinance contains standards for road specifications.

The Township zoning ordinance provisions regarding non-residential driveways and the Engineering Ordinance applies to all land within the several zoning classifications in the Township. In other words, the Township's zoning and engineering standards are not aimed solely at agriculturally zoned property. In any zoning classification, a land owner desiring to construct a non-residential driveway must comply with the Township zoning ordinance requiring site plan approval and the Township engineering standards. The end result is that prior to constructing non-residential driveways a property owner must submit a site plan and obtain site plan approval and a permit from the Township.

**D)   Construction Of The Roadway**

On Friday, February 17, 2006, at approximately 10:00 a.m., Delores and Renee Michaels, ("Michaels") representatives of Rondigo, met with the Township Supervisor and Clerk to discuss Rondigo's use of the property. Michaels explained to the Township officials that they needed to start composting on the property no later than April 1, 2006, and that Rondigo would only compost for approximately one year. Rondigo could donate approximately $10,000.00 to the Township to be used for a park or recreation if that would help facilitate Rondigo's plans for composting on the Thirty Two Mile Road property. Additionally, Rondigo indicated it would sign an agreement with the Township to control actions taken at the site. Rondigo said that the Casco Township site was tied up in court and it needed somewhere to put the compost until the issue was settled. The Township Supervisor indicated that Rondigo's property was zoned

agricultural/residential and composting was only permitted in an industrial zoned property subject also to provisions of the Township zoning and composting ordinance.[2]

Subsequent to the February 17, 2006, meeting with Township officials, Rondigo began work on the property by starting the construction and installation of a crushed concrete road in order to facilitate trucks hauling in leaves, grass and yard waste for composting.[3]  When the Township became aware of Rondigo's construction activities on the site, the Township caused a stop work order to be placed on the property.  The stop work order was issued on February 23, 2006 (*See* Dkt. #88, Ex. 2).

On Monday, February 27, 2006, representatives of Rondigo met with the Township Supervisor and Clerk regarding the issuance of the stop work order.  The Township explained the basis for the issuance of the stop work order and indicated that a letter identifying the specific ordinance sections upon which the stop work order was based would be provided to Rondigo.

On February 28, 2006, Rondigo was provided with a copy of a letter from the Township Supervisor indicating that the construction activities on Rondigo's property would require site plan review pursuant to the Township zoning ordinance.  A representative of Rondigo, Delores Michaels, personally signed acknowledging receipt of a copy of the February 28, 2006, correspondence.[4]  Also, on February 28, 2006, Rondigo was provided with a copy of a letter signed by the Township Supervisor setting forth specific zoning ordinance violations at

---

[2] The minutes from the February 17, 2006 meeting are attached as Exhibit 5 to Dkt. #81.

[3] Pictures #2 through #7 of the roadway construction are attached as Exhibit 6 to Dkt. #81.

[4] The letter and acknowledgment are attached and identified as Exhibit 7 to Dkt. #81.

Rondigo's construction on the road, without an application, site plan approval or permits. Representatives of Rondigo personally acknowledged receipt of the February 28, 2006, correspondence.[5]

On or about March 2, 2006, the Township was advised that Rondigo would file litigation against the Township for injunctive relief and would seek a temporary restraining order precluding the township from enforcing its stop work order.  On March 3, 2006, the Township was advised Rondigo would not file litigation but instead would like to meet with representatives of the Township to discuss issues related to Rondigo's use of the property.

On March 6, 2006, representatives of Rondigo and the Township met at the Township offices and engaged in a discussion of the issues relative to Rondigo's use of the property. Nothing more was heard from Rondigo until March 8, 2006.

Defendants allege that on the evening of March 8, 2006, Rondigo continued work on the road in violation of the Township zoning and engineering ordinances and the stop work order (*See* Dkt. #81, p. 5).  When the Township learned that Rondigo was continuing work, the Township contacted the Macomb County Sheriff Department for assistance in enforcing the stop work order (*id.*).  Representatives of Rondigo constructing the road, told the Macomb County Sheriff Department that they would not stop and the Sheriff's Department could not make them stop (*id.*).  On March 9, 2006, Rondigo continued work on the roadway and was preparing the site to receive compostable materials.

**E)      The Township's First Complaint Regarding The West Roadway**

In Macomb County Circuit Court (Case No. 2006-1054-CZ), the Township of

---

[5] The letter and acknowledgment is attached and identified as Exhibit 8 to Dkt. #81.

Richmond sued Rondigo for its alleged violation of the Township stop work order and alleged violation of the Township zoning and engineering ordinance.[6]  The central issue was whether Richmond Township had the authority under the law to halt the construction of the driveway. The Township also requested a temporary restraining order and preliminary injunction.

On March 9, 2006, Judge Deborah Servitto of the Macomb County Circuit Court granted the Township's request for a temporary restraining order to continue in effect until a hearing could be held on March 20, 2006, on the Township's request for a preliminary injunction.  In extending the Ex Parte Temporary Restraining Order, Judge Servitto found as follows:

> . . . As far as I am concerned, that's the ordinance that is involved. (Engineering Ordinance).  I think that the elevation has changed, I am worried about whether or not there is run off.  I'm not addressing the use of the driveway, I'm not addressing whether it's a roadway. I'm not addressing composting.  But I am concerned about the elevation and the run off and I think it applies . . . Because I do believe that good cause has been shown and the court believes there is a likelihood of injury to the adjoining property owner. . . .

Judge Servitto extended the Township's Temporary Restraining Order to March 27, 2006.[7]

On or about March 31, 2006, Rondigo filed an answer to the Township's complaint for injunctive relief.[8]  Rondigo alleged as affirmative defenses the following:

> 6. The action of the plaintiff have violated the defendant, Rondigo's right to due process and equal protection of the law under the Michigan and United States Constitutions.

> 7. The actions of the plaintiff have deprived the defendants of the full use and enjoyment of its property in violation of the Constitution of the United States and Michigan.

---

[6] The complaint is attached as Exhibit 9 to Dkt. #81.

[7] A copy of the Ex Parte Temporary Restraining Order is attached and identified as Exhibit 10 to Dkt. #81.

[8] The answer is attached as Exhibit 11 to Dkt. #81.

8. The actions of the plaintiff in preventing the defendant, Rondigo, from using its property have resulted in an unconstitutional taking of said property.

On April 6, 2006, the Honorable Robert J. Chrzanowski entered an order granting the Township's request for a Preliminary Injunction restraining Rondigo from construction, installation or use of the roadway on Rondigo's property until further order of the Court.[9]

In a September 29, 2006, ruling on both parties' motions for summary disposition (Dkt. #58, Ex. 1), Circuit Judge John Foster determined that Michigan's MRTFA[10] did not preempt the ability of local governments to regulate the construction of driveways on farms. The court reached this conclusion by ruling that Rondigo's driveway was not directly related to an activity protected under the MRTFA. The court, however, refused to grant summary judgment to the Township because issues of fact remained regarding whether the driveway was in fact subject to regulation under the Zoning Ordinance.

In his subsequent May 8 and May 16, 2007, orders Judge Foster temporarily dissolved the temporary restraining order and preliminary injunction barring Rondigo from building the driveway on its property (Dkt. #58, Exhs. 2 & 3). Judge Foster took this action because he found that the construction of the road was necessary to allow the transportation of the composting

---

[9] A copy of the Preliminary Injunctive Order is attached and identified as Exhibit 12 to Dkt. #81.

[10] The Michigan Right to Farm Act ("MRTFA") is a voluntary program designed to provide compliance assistance and nuisance lawsuit protection. Under MRTFA, a farm operation that emanates odors or dust shall not be found to be a public or private nuisance if the farm operation conforms to "generally accepted agricultural and management practices" ("GAAMPs") established according to policies determined by the Michigan Department of Agriculture ("MDA"). M.C.L.A. 286.473.

8

leaves, which was required for Rondigo to obtain MDA site plan approval.  Further, he found that ground fill activities that complied with the MRTFA and GAAMPs could be carried out without prior township approval because a township ordinance demanding otherwise would improperly be in direct conflict with state law.  Yet, he found that neither the MRTFA nor the related GAAMPs preempted the Township's ordinance regulating the construction of driveways.  Thus, Judge Foster allowed Rondigo to build the driveway to move the leaves, but stated that the issue of whether the driveway conflicted with the ordinance remained an open question; as a result, Rondigo remained potentially liable for the construction of the driveway.

> **F)     The Township's Second Complaint Regarding The East Driveway**

After the court granted the Township's motion for a restraining order prohibiting Rondigo from continuing work on the west access road, Rondigo began bringing in crushed concrete to construct a roadway along the east side of Rondigo's property.  Rondigo began construction of this roadway on the east side of the property in order to facilitate large garbage trucks and gravel trains full of yard clippings to enter the property and dump yard clippings on Rondigo's property.  In other words, Rondigo engaged in the exact same activity on the east side of its property for which Rondigo was restrained from engaging in on the west side of its property.

On or about October 12, 2006, the Township filed a new complaint, Case No: 06-4429-CZ, regarding Rondigo's construction of the roadway on the east side of its property.[11]  On

---

[11] The complaint is attached as Exhibit 13 to Dkt. #81.

November 3, 2006, Rondigo filed an answer to the Township's second complaint.[12]  Rondigo

was restrained by preliminary injunction from utilizing the roadways on its property or from

bringing additional yard waste composting materials to the site.

**F)      Rondigo Files Its Federal Court Complaint**

On or about January 29, 2008, Plaintiffs brought this action claiming that Defendants

have improperly prevented them from going forward with a composting operation and the

construction of a driveway on their property.  Plaintiffs generally have made allegations

involving conspiracy, lying, unequal treatment under the law, and defamation by the Defendants.

For instance, they assert that the State Defendants have conspired to interrupt their use of their

farm and, through lying and misinformation, have attempted to hold them to a higher standard

than is either legally permissible or enforced against other property owners; neighbors and

community groups have conspired against them and submitted baseless complaints regarding

foul odors coming from the Rondigo farm; the Defendants in general have made false oral and

written statements in order to subject the Plaintiffs to public scorn, ridicule and embarrassment.

Plaintiffs' Amended Complaint includes the following counts:

1.      Claims Under 42 U.S.C. § 1983: Plaintiffs claim that the Defendants have deprived them

of their federal procedural and substantive due process rights and Fourteenth Amendment right

to Equal Protection; have taken their property in violation of the Seventh Amendment (although

Plaintiffs state that they meant to bring the takings claim under the Fourteenth Amendment); and

have denied them their right against retaliation under the First Amendment.

---

[12] The answer to the complaint and affirmative defenses are attached as Exhibit 14 to Dkt. #81.

2.      Unconstitutionality of the Richmond Township Ordinance: Plaintiffs claim that the Richmond Township Ordinance dealing with "non-residential driveways" is unconstitutionally vague.

3.      Federal Conspiracy Claims Under 42 U.S.C. § 1985(3): Plaintiffs state that the Defendants worked with a common purpose and in agreement to deprive the Plaintiffs of their First, Seventh and Fourteenth Amendment rights.

4.      Neglect to Prevent Claims Under 42 U.S.C. § 1986: Plaintiffs bring this claim for the alleged knowing failure of the Defendants to prevent the violation of their rights.

5.      Civil Conspiracy: Plaintiffs allege that the Defendants acted under a preconceived plan to commit unlawful acts, including fraud.

6.      Defamation: Plaintiffs claim that the Defendants knowingly made false statements, in writing and orally, to third parties in order to subject the Plaintiffs to public scorn, ridicule and embarrassment.

**G)      The Townships Amended Complaints**

On March 4, 2008, upon the stipulation of Rondigo, the Township filed its First Amended Complaints in both Case No. 06-1054-CZ and Case No. 06-4429-CZ.[13]  The Township's amended complaints added one additional count, alleging that Rondigo's composting operation was in violation of Section 11521 of the Natural Resources and Environmental Protection Act, codified at MCL 324.11521.

---

[13] The amended complaints are attached as Exhibit 15 and Exhibit 16 to Dkt. #81.

11

Rondigo filed answers to both the Township's first amended complaints.[14] Rondigo's affirmative defenses to the Township's amended complaints were identical and in part state:

> 6. Plaintiff's actions have violated Defendant's right to due process and equal protection of the law.
>
> 7. Plaintiff's actions have unconstitutionally deprived Defendant of the full use of its property.
>
> 8. Plaintiff's actions in preventing Defendant from using its property has resulted in an unconstitutional taking of said property.

### H)      The Macomb County Circuit Court Trial

On May 23, 2008, the Circuit Court litigation proceeded to trial before visiting Judge Roland Olzark in both Case No. 06-1054-CZ and Case No. 06-4429-CZ on the issue as to whether Rondigo's use of the west and east access roads without first obtaining a permit and site plan approval from the Township constituted a nuisance per se (Dkt. #81, Ex. 20, p. 5). Defendants maintain that no proofs were offered by Rondigo at the trial which addressed any request for monetary relief nor Rondigo's affirmative defenses regarding the Township's violation of Rondigo's due process and equal protection of the law or unconstitutional deprivation of Rondigo's full use of its property (Dkt. #81, p. 10.).  In fact, Defendants assert that Rondigo called no witnesses at trial (*id.*).  Contrary to the Moving Defendants' assertion, Rondigo claims it not only cross-examined Richmond's trial witnesses, but, in its own trial presentation on May 27, 2008, called as a witness licensed engineer Philip Porte (a copy of the partial transcript of the May 27, 2008 trial at 19-20 is attached as Ex. 6 to Dkt. #88).  Rondigo asserts further that it used Richmond's trial exhibits in its case and introduced its own exhibits.

---

[14] The answers to the Township's first amended complaints are attached as Exhibit 17 and Exhibit 18 to Dkt. #81.

In an Opinion and Order dated July 28, 2008, Judge Olzark ruled that the Township had no cause of action against Rondigo.  Specifically, Judge Olzark ruled that the Township zoning and engineering ordinances as it relates to the east and west roadways were unconstitutionally void for vagueness and could not be enforced against Rondigo (Dkt. #81, Ex. 20).  On September 22, 2008, the trial court ruled from the bench that it denied Richmond's motion for reconsideration, and an order setting forth this decisions was entered on October 21, 2008 (*see* Dkt. #28, p. 7).

On October 29, 2008, the Township filed a Claim of Appeal with the Michigan Court of Appeals from Judge Olzark's Opinion and Order.[15]

## II.   ANALYSIS

### A)   Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."

The long accepted rule on what constitutes sufficiency in pleading is drawn from *Conley v. Gibson*, 355 U.S. 41, 46 (1957), which stated "that a complaint should not be dismissed for failure to state a claim unless *it appears beyond doubt* that the plaintiff can *prove no set of facts* in support of his claim which would entitle him to relief" (emphasis supplied.).  Yet in 2007, the

---

[15] The Township's Claim of Appeal is attached as Exhibit 19.

13

Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. ----, 127 S.Ct. 1955, 1965 (2007),

modified the standard for dismissal.  While courts are still to use the Rule 12(b)(6) standard for

measuring futility of a proposed amended claim, *Twombly* rejected the Rule 12(b)(6) standard

articulated in *Conley*.  *Twombly*  notes that under a "literal reading of *Conley*'s 'no set of facts'

standard,  a wholly conclusory statement of claim would survive a motion to dismiss whenever

the pleadings left open the possibility that a plaintiff might later establish some 'set of

[undisclosed] facts' to support recovery."  *Twombly*  127 S.Ct. 1955, 1968  (2007).  *Twombly*

rejects this literal reading of *Conley* and required that pleadings state sufficient facts to show not

just a possible, but a "plausible" claim of relief.  Instead of the "no set of facts" standard of

*Conley, Twombly* endorsed the standard that a complaint be plausible to the extent that from the

facts alleged there is a  "'reasonably founded hope' that a plaintiff would be able to make a

case," citing *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347  (2005), and its quote

from *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741(1975).

     *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009), suggests that *Twombly* should be

limited to costly and sprawling litigation.  Thus, *Twombly* unquestionably applied to a case such

as this one.  Consistent with this clarification by *Twombly*, the Sixth Circuit had earlier noted

that it is not enough for a complaint to contain mere conclusory allegations of wrongful conduct,

rather some factual basis for such claims must be set forth in the pleadings. See *e.g.  Chapman

v. City of Detroit,* 808 F.2d 459, 465 (6th Cir.1986): "A judge may not grant a Rule 12(b)(6)

motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v.

Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).  In deciding a motion under that Rule, "[t]he court

must construe the complaint in the light most favorable to the plaintiff, accept all factual

allegations as true." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). The court is not required to accept as true alleged legal conclusions or unwarranted factual inferences. *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000); *see also Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).

        **B)**    **Factual Analysis**

           **1)**    ***Res Judicata***

In the Sixth Circuit, *res judicata* principles apply where a second lawsuit involves the same parties, acting in the same capacities, and touching the same subject matter as the first suit. *Whitfield v City of Knoxville*, 756 F. 2d 455, (6th Cir. 1985). When considering the preclusive effect of a state court judgment for purposes of *res judicata*, federal courts look to the law of the state. *Hamilton's Bogarls, Inc. v Michigan*, 501 F.3rd 644 (6th Cir. 2007).

Michigan has adopted a broad application of the doctrine of *res judicata*, which bars not only claims actually litigated in the prior action, but all claims arising out of the same transaction that the parties, exercising reasonable diligence, could have raised in the prior action but did not. *Limbach v. Oakland County Road Commission*, 226 Mich. App. 389, 396 (1997). "The test for determining whether two claims are identical for *res judicata* purposes is whether the same facts or evidence are essential to the maintenance of the two claims," *Huggett v. Dep't of Natural Resources*, 232 Mich. App. 188, (1998), not whether the grounds asserted for relief are the same. *Jones v. State Farm Mut. Auto. Ins. Co.*, 202 Mich. App. 393, 401, (1993), *mod'f on other grounds*, *Patterson v. Kleiman*, 447 Mich. 429, 433 n. 3 (1994).

Application of the doctrine of *res judicata* requires that (1) the prior action was decided

on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies. *Baraga Co. v State Tax Comm*., 466 Mich 264, 269 (2002).

Here, the state court proceeding was decided on the merits when the state court found that the Township had no cause of action against Rondigo. In the state court proceedings, Plaintiffs filed the affirmative defenses of violation of due process and equal protection, as well as unconstitutional taking of their property.[16] Yet, Plaintiffs failed to litigate these constitutional claims at trial. As noted above, the issue as to the constitutionality of the Township's zoning and engineering ordinances with regard to non-residential driveways has been adjudicated in the Macomb County Circuit Court and has been appealed by the Township to the Michigan Court of Appeals.

The second element for the application of *res judicata* is that the decree in the prior action was a final decision. It is clear that the state trial court's decision was a final one and the Township has filed a Claim of Appeal in the Michigan Court of Appeals. Indeed, the order from the state court states that "this Opinion and Order resolves the last pending claim and closes this case."[17]

The third element of *res judicata* is that the matter contested in the second case was or could have been resolved in the first. The claims asserted in the present action could have been litigated in the underlying state court proceeding. The parties are essentially identical in both

---

[16] *See* Plaintiffs Answer and Affirmative defenses, attached as Exhibits 17 and 18 to Dkt. #81.

[17] A copy of the state court's Opinion and Order dated July 28, 2008 is attached as Exhibit 20 to Dkt. #81.

proceedings and the underlying facts which give rise to both claims are identical.  Plaintiffs

should have litigated the constitutional claims that they raised as affirmative defenses in the state

court proceedings.  The due process and equal protection claims asserted in the present

Complaint are the exact same claims which were asserted in the state court litigation and for

which Rondigo failed to pursue or join as counterclaims.

Plaintiff did not assert their money damages claim, conspiracy claim or defamation claim

in the state court, but those claims could have been brought during those proceedings.  Michigan

state courts enjoy concurrent jurisdiction with federal courts over §1983 claims.  *Eliason Corp. v*

*Bureau of Safety and Regulation*, 564 F. Supp 1298 (D.C. Michigan 1983).  Moreover, Michigan

state law has a cause of action for defamation, *Burden v Elias Brothers*, 240 Mich. App. 723

(2000), but Plaintiffs failed raise this allegation in the state court when they had the opportunity.

Finally, at Count V of the present Complaint, Rondigo attempts to set forth allegations with

regard to a claim for civil conspiracy.  A claim for civil conspiracy may also be asserted in state

court. *Temborius v. Slatkin*, 157 Mich. App. 587 (1986), *see also Mays v Three Rivers Rubber*

*Corp*., 135 Mich. App. 42 (1984).

Rondigo argues that the facts and evidence in the state case are different than the facts

and evidence in the federal case.  Yet, *res judicata* bars relitigation of claims that are based on

the same transaction or events as a prior suit.  *Ditmore v. Michalik*, 244 Mich. App. 569, 577

(2001).  Two claims are identical if the same facts or evidence are essential to the maintenance

of both claims.  *Huggett v. Dep't of Natural Resouce*, 232 Mich. App. 188, 197-98 (1998); *City*

*of Detroit v. Nortown Theatre*, 116 Mich. App. 368 (1992).  In the present case, the facts and

evidence of both cases are essentially identical and arise from the Township's attempts to

enforce its zoning ordinance.

In making its argument that *res judicata* does not apply to the second suit, Rondigo

relies heavily upon *Board of County Road Commissioners of Eaton v Schultz*, 205 Mich. App.

371 (1994).[18]  Yet, the United States District Court in the Eastern District of Michigan in *Reid v.*

*Thetford Township*, 377 F. Supp. 2d 621, 625 (2005) declined to follow *Eaton*, and noted that the

Sixth Circuit has said this case represents "a split of authority," *Pryor & Capitol Ave. Homes,*

*Inc. v. City of Lansing*, 70 Fed. Appx. 810, 814 (6th Cir. 2003), and is "the exception" *Id.*

In *Reid*, the township filed a state court action against land owner Reid to enforce an

ordinance prohibiting property owners from keeping junk vehicles on their property.  The state

court ruled in favor of the township, and ordered Reid to remove all but two vehicles from his

property.  The court also permitted the township to arrange for towing the junk vehicles at Reid's

expense if Reid did not comply.  Reid subsequently filed suit against the township and township

supervisor in state court, claiming that the enforcement activities violated his civil rights.  The

township removed the case to federal court, and filed a motion for summary judgment pursuant

to Fed. R. Civ. P. 56.

The federal court dismissed the lawsuit against the township, holding that *res judicata*

barred Reid's suit.  The court noted that:

---

[18] In *Eaton County Road Commissioners v. Schultz*, 205 Mich. App. 371, 376, (1994), the
court held that the county's failure to counterclaim against Schultz in an earlier action did not
preclude its current claim.  *Id.* ("Causes of action and defenses are not interchangeable.").  In
*Pryor & Capitol Ave. Homes, Inc. v. City of Lansing*, 70 Fed. Appx. 810, 814 (6th Cir. 2003), the
Sixth Circuit noted that in *Sprague v. Buhagiar*, 213 Mich. App. 310 (1995), however, the
Michigan Court of Appeals precluded a claim under the same circumstances.  Citing *Karp v.*
*Michigan Nat'l Bank*, 2001 WL 721383 (Mich. App. Feb. 27, 2001) (unpublished), the Sixth
Circuit further noted that the Michigan Court of Appeals has noted but not resolved this split of
authority. *Id.*

18

> . . . claim preclusion can operate in two ways.  It will bar 'not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not', (citing *Sewell v Clean Cut Mgmt*., 463 Mich 569,575; 621 NW2d 222 (2001)).  **That latter aspect of claim preclusion also bars claims that a party could have brought as counterclaims in the first action**

*Reid*, 377 F. Supp. 2d at 625 (emphasis added).  The court ruled that Reid should have raised and pursued his civil rights allegations as counterclaims in the first lawsuit because they arose from the same transactional set of facts as the ordinance violation.

In so ruling the federal court followed the "broader transactional test" accepted by the Michigan Supreme Court.  The federal court stated:

> The 'transactional' test provides that 'the assertion of different kinds of theories or relief still constitute a single cause of action of a single group of operative facts give rise to the assertion of relief'. . . Under this approach, a claim is viewed in 'factual terms' and is considered 'coterminous with the transaction, regardless of the number of substantive theories or variant forms of relief flowing from those theories that may be available to plaintiff; [ ]and regardless of the variations in the evidence needed to support the theories or rights.'

*Reid*, 377 F. Supp. 2d at 627 (citing *Adair v. State*, 470 Mich. 105, 124 (2004)).

Similarly, the court in *Hendrix v Roscommon Township*, 2004 WL 1197359 (E.D. Mich. May 18, 2004), held that *res judicata* precluded plaintiffs from filing a §1983 claim against a township who previously filed suit in state court to enforce their zoning ordinance.  In *Hendrix*, the township filed suit against plaintiffs to enforce an ordinance that regulated the operation of junk and automobile salvage yards.  Plaintiffs answered the state court complaint and asserted numerous affirmative defenses, including violation of due process.  The state court ruled partly for the township and partly for plaintiffs.  Shortly before the state judgment was issued, plaintiffs filed §1983 claims in federal court.  The federal court ruled that *res judicata* barred plaintiffs' claims because such claims could have been raised in the state court

proceedings.  Plaintiffs raised affirmative defenses that included violation of due process and

other constitutional claims, just as the Rondigo Plaintiffs did.  The federal court noted that "once

plaintiff raised these issues [the claims he asserted in the second suit] as defenses in the first suit,

they were required to be fully and finally determined in that suit," citing *Sprague v. Buhagiar*,

213 Mich App 310 (1995), where the court precluded a second claim that could have been raised

as a counter-complaint or affirmative defense in first action under broad application of *res

judicata* doctrine.

   The fourth element of *res judicata* is that both actions involved the same parties or their

privies.  Rondigo argues that the parties are not the same in the state court action and in the

federal case because Delores and Renee Michaels, and Gordon Fuerstenau, were not part of the

first suit.  Yet, *res judicata* applies to both parties and privies.  The parties to the second action

need be only substantially identical to the parties in the first action.  *Peterson Novelties, Inc v.

City of Berkley*, 259 Mich. App. 1,12 (2003).  Privity requires a substantial identity of interests

and a relationship in which the interests of the non-party were presented and protected by the

litigant.  *ANR Pipeline Co. v. Dep't of Treasury*, 266 Mich. App. 190, 214 (2005).

   There is no reasonable argument that the parties in the state court action and the federal

court action are not substantially identical.  Although Delores and Renee Michaels were not part

of the first lawsuit, they own and operate Rondigo, and certainly have a substantial identity with

Rondigo.  The same argument applies to Gordon Fuerstenau, who was not a party to the first

lawsuit.  As Township Supervisor, his interests were certainly protected by the Township as a

litigant.  The court in *Dubac v Green Oak Twp*., 312 F.3d 736, 751 (6th Cir. 2002),  stated that

"appellant should not be permitted to continue this repetitive litigation simply by finding some

20

municipal official that has not yet been sued, and try to blame what he claims was systematic group mistreatment of him on that one person individually."

In conclusion, Plaintiffs are precluded from pursuing their claims in this Court because they arise from the same factual transaction as the claim in the first action, which achieved a final decision on the merits and involved the same parties or privies as this case. Because the claims in both actions arose from the same factual transaction, Plaintiffs could have and should have raised the civil rights allegations as counterclaims in county court with the ordinance violation. Because Plaintiffs have failed to raise the civil rights counterclaims in the first action, they are barred from raising them now.

### 2)  The *Younger* Doctrine

In the alternative, the undersigned recommends that this Court decline to exercise jurisdiction under the *Younger* Doctrine. Under *Younger* abstention, absent unusual circumstances not asserted here, a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved. *Younger v. Harris*, 401 U.S. 37, 40 (1971); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Squire v. Coughlan*, 469 F.3d 551, 555 (6th Cir. 2006); *Sun Refining & Mktg. Co. v. Brennan*, 921 F.2d 635, 638-42 (6th Cir. 1990). "Younger abstention is not a question of jurisdiction, but is rather based on strong policies counseling against the exercise of such jurisdiction." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (citations omitted). *Younger* abstention requires a federal court to abstain from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings. *Younger*, 401 U.S. at 40-41. The Sixth Circuit looks to three factors to determine whether a court should abstain from hearing

a case under the *Younger* doctrine: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *O'Neill*, 511 F.3d at 643 (citations omitted).

In 2003, the Sixth Circuit Court of Appeals noted that a state court proceeding is considered to be pending until such time as all state appellate remedies have been exhausted. *Loch v. Watkins*, 337 F.3d 574, 578 (6th Cir. 2003). Yet, the Supreme Court also opined that the abstention doctrine is not always appropriate simply because a civil proceeding is pending in a state court. *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 14, n. 12 (1987). Thus, an intervention by a federal court may become necessary if (1) the state proceeding was conducted in bad faith or initiated in order to harass, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1974), (2) there is an urgent need for some form of immediate equitable relief, *Kulger v. Helfant*, 421 U.S. 117, 124-25 (1975), or (3) a state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Trainor v. Hernandez*, 431 U.S. 434, 446-47 (1977).

Plaintiffs argue that in *Habich v. City of Dearborn*, 331 F.3d 524 (6th Cir. 2003), the Sixth Circuit "made clear that *Younger* stands only for the principal that in cases seeking to enjoin ongoing state proceedings, federal courts should not exercise jurisdiction." (Dkt. #88, p. 29). Plaintiffs, however, overstate the holding in *Habich*. In *American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 336 (6th Cir. 2007), the Sixth Circuit explained that the panel in *Habich* "narrowly carved out" an "exception" to *Younger* abstention. *Habich* held

22

only that abstention was "inappropriate where the issues raised in the federal lawsuit were

'collateral' to the state proceedings--that is--the plaintiff's suit would not be resolved by the

case-in-chief or as an affirmative defense to the state court proceedings." *Id.* (citing, *Habich*,

331 F.3d at 531-32). Here, Plaintiffs raised a number of their present claims as affirmative

defenses in the state court proceeding and could have addressed their money damages claim, and

claims of conspiracy and defamation as counterclaims.

In applying the first factor of *Younger* to this case, there is no question that there were are

ongoing state judicial proceedings regarding the constitutionality of the Township's ordinances

at the time that Plaintiffs filed their federal lawsuit. And Plaintiffs do not dispute that there are

proceedings currently pending in the Michigan Court of Appeals. Moreover, the regulation of

land use and engineering standards for roads implicate important state interests, which satisfies

the second factor.

With respect to the third factor, Plaintiff had an opportunity to address all of its claims in

the state courts. Federal courts must presume that the state courts are able to protect the interests

of a federal plaintiff. *See Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995). As long as the state

provides an opportunity to litigate constitutional claims, abstention is required, even if a plaintiff

fails to avail himself of this opportunity. *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) ("Here it

is abundantly clear that appellees had an *opportunity* to present their federal claims in the state

proceedings. No more is required to invoke *Younger* abstention" (emphasis in original)); *World

Famous Drinking Emporium v. City of Tempe*, 820 F.2d 1079, 1083 (9th Cir. 1987) ("That

World Famous failed to avail itself of the opportunity to litigate its constitutional claim in the

state forum, does not demonstrate that the state forum did not provide an opportunity to litigate

that claim. . . .World Famous had an opportunity to pursue its constitutional claim upon appeal in the state courts, and failed to do so.  No more is required for *Younger* abstention" (citation and footnote omitted)).

Here, Plaintiffs did raise some constitutional challenges in the state court forum, and in fact, received the constitutional relief they sought in the state court regarding their void for vagueness claims.  In addition, the Plaintiffs raised several affirmative defenses, including a takings claim, and due process and equal protection violations, which are identical to the claims raised in this suit.  As noted above, Plaintiffs had the *opportunity* to raise the remainder of their claims in the state court proceedings.  Accordingly, if the Court does not adopt the undersigned's recommended *res judicata* findings, **IT IS RECOMMENDED** that it abstain from hearing Plaintiffs' current lawsuit under the *Younger* doctrine.

### 3)      *Defendant Fuerstenau Is Entitled To Qualified Immunity*

In addition to the other doctrines that bar Plaintiffs' claims in the present case, Defendant Gordon Fuerstenau is entitled to qualified immunity.  Qualified immunity protects officials sued in their official capacities where there has been a claim of money damages.  *Flagner v Wilkinson*, 241 F3d 475, 483 (6th Cir. 2001).  Qualified immunity is an *entitlement to "immunity from suit" and not merely immunity from liability.  Sova* v City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir. 1998).  The U.S. Supreme Court held that the qualified immunity issue threshold should be determined by the court as a question of law long before trial.  *Harlow v Fitzgerald*, 457 U.S. 800 (1982); *Hunter v. Bryant*, 502 U.S. 224 (1991).  Plaintiffs have the burden of proof to show that Defendant is not entitled to qualified immunity.  *Wegener v City of Covington*, 933 F.2nd 390, 392 (6th Cir. 1991).

24

Qualified immunity shields government officials, who are performing discretionary actions, from civil damages as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v Creighton*, 483 U.S. 635, 638 (1987). The qualified immunity doctrine is applied even when rights are unclear, when there is doubt as to the legality of the specific conduct. *Rich v City of Mayfield Heights*, 955 F. 2d 1092, 1096 (6th Cir. 1992). The *Anderson* court held, citing *Harlow, supra*, that "our cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right . . . it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson* at 639.

All of the actions taken by Gordon Fuerstenau, as Township Supervisor, as alleged in Plaintiffs' Amended Complaint, were taken pursuant to a lawfully enacted ordinance. An ordinance is presumed to be constitutionally valid. *Watnick v. Detroit*, 365 Mich 600, 606 (1962). Plaintiffs have presented nothing to support a determination that for periods prior to the Macomb County Circuit court finding that sections of the Ordinance were void for vagueness it would be apparent to a reasonable person in Gordon Fuerstenau's position that the Engineering Standards and Zoning Ordinance enacted by Richmond Township was invalid and unconstitutional on its face or as applied to Plaintiffs. Therefore, prior to that Macomb County ruling no reasonable county supervisor would understand what he is doing to enforce a county ordinance violated a constitutional right. Thus, it cannot be found that Gordon Fuerstenau violated a clearly established right. Accordingly, **IT IS RECOMMENDED** that Plaintiffs' claims

25

against Gordon Fuerstenau be **DISMISSED** based upon the doctrine of qualified immunity.


## III.   RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants Richmond Township and Gordon Fuerstenau's dispositive motion be **GRANTED**.  The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.  A party may file a reply brief within 5 days of service of a response.  The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

Dated: June 24, 2009                          s/Steven D. Pepe
Ann Arbor, Michigan                          United States Magistrate Judge


Certificate of Service


The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or
parties of record by electronic means or U.S. Mail on June 24, 2009 .


                                             s/Jermaine Creary
                                             Interim Case Manager