UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONDIGO LLC, a Michigan limited
liability company, DOLORES MICHAELS
a/k/a NICOLINA A. MICHAELS, and
RENEE MICHAELS,

                Plaintiffs,                CIVIL ACTION NO. 08-10432

         v.                  DISTRICT JUDGE GERALD E. ROSEN

TOWNSHIP OF RICHMOND,           MAGISTRATE JUDGE MARK A. RANDON
MICHIGAN, a Michigan municipal
corporation, GORDON FUERSTENAU,
in his official and individual capacities,
THE FOUR TOWNSHIP CITIZENS'
COALITION, INC., a Michigan nonprofit
corporation, JARED SLANEC, KRISTYN
SLANEC, JOHN GIANNONE, SARA
GIANNONE, SALVATORE GIANNONE,
NANCY GIANNONE, BILLY TRAVIS,
MARLENE TRAVIS, THOMAS MACKLEY,
PAULA MACKLEY, MICHAEL SYLVESTRY,
MICHAEL LOCK, KARLA SITEK, ROBERT
GRUCZ, LESTER SOVA, DEVON SLANEC,
ANNETTE NORMAN, ANGELA M. JOBS,
JOHN REY, JUDITH REY, LINDA GERHARDT,
WAYNE WHITMAN, in his individual capacity,
STEVEN MAHONEY, in his individual capacity,
TERESA SEIDEL, in her individual capacity,
MATTHEW FLETCHER, in his individual capacity,
and ANNE HOKANSON, in her individual capacity,
jointly and severally,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
REMAINING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT/MOTION TO DISMISS (DKT. NO. 122)**

- 1 -

## I.  INTRODUCTION

This case arises from a disagreement between Plaintiffs, Rondigo LLC, Dolores and

Renee Michaels ("Plaintiffs"), and multiple Defendants over the use of a farm (the "Rondigo

Farm").  The Rondigo Farm sits on property zoned for agricultural and residential uses.

Plaintiffs have planted and harvested crops on the Rondigo Farm since 2004.

Plaintiffs' claims in this case center around alleged violations of their constitutional rights

caused by a conspiracy among the Defendants.  The execution of this conspiracy allegedly

included baseless complaints by Plaintiffs' neighbors about noxious smells emanating from

Rondigo Farm and actions taken by governmental actors to deprive Plaintiffs of their rights to

their property.

As described in greater detail below, all of the governmental actors have been dismissed

from this lawsuit.  The only remaining Defendants are private parties – *i.e.*, Plaintiffs' neighbors

and an organization those neighbors started, called the Four Township Citizens' Coalition.

These private party Defendants filed a motion for partial summary judgment/motion to dismiss

(Dkt. No. 122), which is now before the Court.  For the reasons set forth below, it is

**RECOMMENDED** that this motion be **GRANTED**, and that Plaintiffs' entire lawsuit be

**DISMISSED, WITH PREJUDICE**.

## II.  BACKGROUND

### A.      The Plaintiffs

Plaintiffs are Dolores Michaels, Renee Michaels and Rondigo, LLC.  The Michaels

own and operate Rondigo Farm, approximately 70 acres of which are located in Richmond

- 2 -

Township.  Plaintiffs have engaged in both farming and composting activities on the farm.  The composting program consists of yard clippings and yard waste which Plaintiffs take from outside sources for a fee.  The compost is then applied as fertilizer to the Rondigo Farm fields.

### B.       The Defendants

There are roughly thirty Defendants in this case, falling into four broad categories:

*1) Richmond Township Defendants*:  Richmond Township is the local municipal government entity.  Defendant Gordon Fuerstenau is the Richmond Township supervisor.

*2) Four Township Citizens' Coalition ("FTCC")*: FTCC is an organization representing individuals who live in close proximity to the Rondigo farm; the FTCC challenges Plaintiffs' commercial composting activities.

*3) Homeowner Defendants*:  The Homeowner Defendants are Plaintiffs' neighbors – Defendants Jared Slanec, Kristyn Slanec, John Giannone, Sara Giannone, Salvatore Giannone, Nancy Giannone, Billy Travis, Marlene Travis, Thomas Mackley, Paula Mackley, Michael Sylvestry, Michael Lock, Karla Sitek, Robert Gruz, Devon Slanec, Annette Norman, Angela M. Job, Linda Gerhardt, John Rey, and Judith Rey.  Plaintiffs allege, generally, that the Homeowner Defendants made false complaints to government officials (MDEQ, MDA and Richmond Township officials) about odors emanating from Plaintiffs' property and that the Homeowner Defendants communicated with the media to garner public support for their cause.  Plaintiffs' also allege that these Defendants, through the FTCC, filed a frivolous lawsuit against Plaintiffs in the Macomb County Circuit Court.

*4) State Defendants*: There are two state departments involved in this case: the Michigan Department of Agriculture ("MDA") and the Michigan Department of Environmental

Quality ("MDEQ").  Plaintiffs have also sued individual employees of these departments in their individual capacities – Defendants Wayne Whitman, Stephen Mahoney, Teresa Seidel, Matthew Flechter and Anne Hokanson.

**C.    FTCC v. Rondigo**

In Macomb County Circuit Court (Case No. 06-1471-CZ), the FTCC brought an action claiming that the alleged commercial composting facility on Rondigo Farm was a nuisance and a violation of the Michigan Environmental Policy Act (Dkt. No. 58, Ex. 4).  The FTCC also sought a declaratory judgment under the Michigan Right to Farm Act.  Circuit Judge John Foster, however, dismissed the FTCC's Complaint, ruling that the FTCC did not have standing to sue. Judge Foster reasoned that the FTCC's complaint and allegations hinged upon the assertion that Rondigo was a commercial composting operation.  Yet, the FTCC could not show an injury in fact because it was unable to present evidence that Rondigo Farm was actually a commercial composting operation; without such evidence, the injuries the FTCC asserted in its complaint were merely hypothetical or conjectural, which did not satisfy the Supreme Court's test for standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  With no proof of an injury in fact, Judge Foster held that the FTCC had no standing to sue Rondigo Farm for nuisance.

The Michigan Court of Appeals upheld Judge Foster's decision, holding that "the trial court properly found that plaintiffs could not simply rely on the unsupported allegations in the complaint [that Rondigo Farm was a commercial composting operation] and that plaintiffs must support the allegations with documentation" (Dkt. No. 58, Ex. 5, p. 5).

- 4 -

**D.    The Present Lawsuit**

Plaintiffs' Amended Complaint (Dkt. No. 4) includes the following counts:

*1) Claims Under 42 U.S.C. § 1983*: Plaintiffs claim that Defendants have deprived them of their federal procedural and substantive due process rights and Fourteenth Amendment right to Equal Protection; have taken their property in violation of the Seventh Amendment; and have denied them their right against retaliation under the First Amendment.

*2) Unconstitutionality of a Richmond Township Ordinance*: Plaintiffs claim that a Richmond Township Ordinance, dealing with "non-residential driveways," is unconstitutionally vague.

*3) Federal Conspiracy Claims Under 42 U.S.C. § 1985(3)*: Plaintiffs state that Defendants worked with a common purpose and in agreement to deprive Plaintiffs of their First, Seventh, and Fourteenth Amendment rights.

*4) Neglect to Prevent Claims Under 42 U.S.C. § 1986*: Plaintiffs bring this claim for the alleged knowing failure of Defendants to prevent the violation of their rights.

*5) Civil Conspiracy*: Plaintiffs allege that Defendants acted under a preconceived plan to commit unlawful acts, including fraud.

*6) Defamation*: Plaintiffs claim that Defendants knowingly made false statements, in writing and orally, to third parties in order to subject Plaintiffs to public scorn, ridicule, and embarrassment.

On May 12, 2008, the State Defendants moved to dismiss Plaintiffs' Complaint (Dkt. No. 48).  Magistrate Judge Steven Pepe recommended that the State Defendants' dispositive motion

be granted in part and denied in part (Dkt. No. 95).  In particular, Magistrate Judge Pepe recommended that all of Plaintiffs' claims against the State Defendants be dismissed, with the exception of Plaintiff's equal protection claim, which remained viable against the State Defendants. *Id.*

On November 10, 2008, the Richmond Township Defendants moved to dismiss Plaintiffs' Complaint (Dkt. No. 81).  Magistrate Judge Pepe recommended that the Richmond Township Defendants' motion be granted in full (Dkt. No. 107).  Judge John Feikens adopted Magistrate Judge Pepe's recommendations as to the State Defendants and as to the Richmond Township Defendants, on August 14, 2009 and September 22, 2009, respectively (Dkt. Nos. 115, 120).  At that juncture, the only remaining claims against government Defendants were Plaintiffs' equal protection claims against the State Defendants.

The State Defendants then filed an interlocutory appeal, challenging the portion of Judge Feikens' order denying their dispositive motion as to Plaintiff's equal protection claims.  On June 1, 2011, the Sixth Circuit granted the State Defendants' appeal, and dismissed all of Plaintiffs' claims against them. *See Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011) (Dkt. No. 139).

Thus, at the present time, the only remaining Defendants are the FTCC, which is a not-for-profit organization, and the Homeowner Defendants, all of whom are members of the FTCC. These Defendants filed a motion for partial summary/motion to dismiss (Dkt. No. 122), which is now before the Court.  The FTCC and the Homeowner Defendants raise several alternative arguments in their dispositive motion as to why Plaintiffs' Complaint against them should be dismissed.  In particular, these Defendants argue that Plaintiffs have not properly alleged that

they were "acting under color of state law," that Count II (challenging the constitutionality of a Richmond Township ordinance) does not state a claim against them, that Plaintiffs fail to state a claim against them under §§ 1985 & 1986, that the *Noerr-Pennington* doctrine bars Plaintiffs' claims, and that Plaintiffs cannot maintain a conspiracy claim against them, since the governmental entity Defendants have been dismissed based on qualified immunity.

As discussed in detail below, this Magistrate Judge finds that the *Noerr-Pennington* doctrine bars all of Plaintiffs' claims against the FTCC and the Homeowner Defendants, and it is recommended that Plaintiffs' Complaint against the FTCC and the Homeowner Defendants be dismissed on these grounds. Accordingly, this Report and Recommendation does not analyze Defendants' alternative arguments for dismissal.

## II.  ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249(1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If

the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

### B.    Motion To Dismiss Standard

Rule 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. Under the Supreme Court's articulation of the Rule 12(b) (6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007), the Court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. "[N]aked assertions devoid of further factual enhancement" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a Rule 12(b)(6) motion for dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555) (citations and quotations omitted). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Id.* (citing *Bell Atlantic*, 550 U.S. at 555).

- 8 -

C.    The *Noerr-Pennington* Doctrine Bars Plaintiffs' Claims Against
      the FTCC & the Homeowner Defendants

The *Noerr-Pennington* doctrine – which derives from *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), and *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127 (1961) – protects persons from liability in their efforts to enforce their First Amendment rights to petition the government and to petition the courts for judicial relief. *See Opdyke Inv. Co. v. City of Detroit*, 883 F.2d 1265, 1273 (6th Cir.1989); *see also California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  Although the doctrine was originally grounded in anti-trust jurisprudence, courts have extended the doctrine to other activities based upon First Amendment principles.  *See Primetime 24 Joint Venture v. Nat'l Broad. Co.*, 219 F.3d 92, 99–100 (2nd Cir. 2000).

Most relevant to the present case, the Sixth Circuit has held that the *Noerr-Pennington* doctrine applies to civil rights claims under 42 U.S.C. § 1983.  *See Eaton v. Newport Bd. of Educ*., 975 F.2d 292, 298 (6th Cir. 1992) ("Under the *Noerr-Pennington* doctrine, liability may not be assessed under § 1983 or the antitrust laws except in very limited circumstances, for actions taken when petitioning authorities to take official action, regardless of the motives of the petitioners, even where the petitioning activity has the intent or effect of depriving another of property interests."); *Knology, Inc. v. Insight Communications Co.*, 393 F.3d 656 (6th Cir. 2004).[1]  Courts in this district have also extended the *Noerr-Pennington* doctrine's protection to

---

[1]    *See also, Video Int'l Prod., Inc. v. Warner-Amex Cable Communications, Inc*., 858 F.2d 1075, 1084 (5th Cir. 1988) (finding *Noerr-Pennington* precluded the defendant's liability as conspirator with city in violation of civil rights under § 1983); *Stevens v. Tillman*, 855 F.2d 394, 404-05 (7th Cir. 1988) (noting applicability of *Noerr-Pennington* as defense to the plaintiff's civil rights action, but finding for the defendants on other grounds); *Evers v. County of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984) (upholding award of attorney's fees to the defendants immunized from liability by *Noerr-Pennington* for petitioning government to declare road spanning the plaintiff's land public); *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614-15 (8th Cir. 1980) (holding private citizen

state law claims.  *See DIRECTV, Inc. v. Milliman,* Case No. 02–74829, 2003 WL 23892683 *7-8 (E.D. Mich., Aug. 26, 2003) (dismissing the defendant's state counterclaims of extortion, fraud, civil conspiracy and defamation under *Noerr-Pennington* doctrine); *Pennwalt Corp. v. Zenith Labs., Inc*., 472 F.Supp. 413, 423 –24 (E.D. Mich.1979).   In addition, the doctrine has been extended to pre-litigation activities, such as threats to sue and demand letters.  *See Primetime 24 Joint Venture*, 219 F.3d at 100 (collecting cases); *In re Cardizem CD Antitrust Litig*., 105 F.Supp.2d 618, 637 (E.D. Mich.2000) ( "*Noerr–Pennington* immunity has been extended to non-sham, pre-litigation threats of suit, demand letters, and communications about pending suits.").

      The *Noerr-Pennington* doctrine is narrowly limited by the "sham" exception, "which covers cases where the defendant intended to use the petitioning process merely to harass the plaintiff."  *Eaton*, 975 F.2d at 298.  A plaintiff seeking to establish the "sham" exception must plead and prove "that the [underlying] lawsuit is objectively baseless in that no reasonable litigant could expect success on the merits...."  *Neway Anchorlok Int'l, Inc. v. Longwood Indus., Inc*., 107 F.Supp.2d 810, 812 (W.D. Mich.1999) citing *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries*, Inc. 508 U.S. 49, 60 (1993).  The Supreme Court set out a two-part test for the "sham" exception to the *Noerr-Pennington* doctrine in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc*., 508 U.S. 49, 113 S.Ct. 1920, 123

---

immune from § 1983 liability in zoning dispute); *Aknin v. Phillips*, 404 F.Supp. 1150 (S.D. N.Y. 1975) (finding citizens who urged village officials to remedy noise problems not liable for officials' application of unconstitutional noise ordinances, and stating "[t]o permit maintenance of this type of civil rights lawsuit against a private individual would...have an unfortunate and unjust chilling effect upon the exercise by members of the public of their First Amendment right to complain about a public nuisance."), *aff'd* 538 F.2d 307 (2nd Cir. 1976).

L.Ed.2d 611 (1993) (" PRE "). The Court held that a court may examine a litigant's subjective

motivation only if the challenged litigation is "objectively baseless":

> First, the lawsuit must be objectively baseless in the sense that no reasonable
> litigant could realistically expect success on the merits. If an objective litigant
> could conclude that the suit is reasonably calculated to elicit a favorable outcome,
> the suit is immunized under *Noerr*, and an antitrust claim premised on the sham
> exception must fail. Only if the challenged litigation is objectively meritless may
> a court examine the litigants subjective motivation. Under this second part of our
> definition of a sham, the court should focus on whether the baseless lawsuit
> conceals "an attempt to interfere directly with the business relationships of a
> competitor," through the "use of the governmental process – as opposed to the
> outcome of that process – as an anticompetitive weapon."

*Id.*, 508 U.S. at 60–61 (footnote and citations omitted). The Court also cautioned in a footnote

that an unsuccessful suit should not automatically be viewed as meritless:

> A winning lawsuit is by definition a reasonable effort at petitioning for redress
> and therefore not a sham. On the other hand, when the antitrust defendant has lost
> the underlying litigation, a court must "resist the understandable temptation to
> engage in post hoc reasoning by concluding" that an ultimately unsuccessful
> "action must have been unreasonable or without foundation."

*Id.* at 60 n. 5 (citations omitted). The Fifth Circuit has noted: "[T]o the extent the litigant has a

reasonable basis for believing that his claim of standing might be accepted by the court, and thus

that he will have the right to participate in the litigation process and obtain relief, he will be

protected by *Noerr-Pennington* even though he ultimately loses." *In re Burlington Northern,*

*Inc.*, 822 F.2d 518, 530 (5th Cir. 1987). The *Burlington* court went on to observe that only a

party advocating a patently frivolous standing argument would lose *Noerr-Pennington*

protection.

Plaintiffs argue that the FTCC's and the Homeowner Defendants actions in this matter

fall within the "sham" exception to the *Noerr-Pennington* doctrine. In particular, Plaintiffs point

- 11 -

to the following allegations in their Amended Complaint (Dkt. No. 4) which, according to

Plaintiffs, properly allege that the FTCC's lawsuit was "objectively baseless" (*see* Plaintiffs'

supplemental reply brief; Dkt. No. 145 at 5-6):

      79. Also, on or before March 9, 2006, before the Rondigo plaintiffs had undertaken any on-farm or other composting activities on their Richmond property, defendant Seidel, employed at the Air Quality Division of the Michigan Department of Environmental Quality ("MDEQ"), began conspiring with defendants Richmond, Fuerstenau, FTCC, Gerhardt, Judith Rey, John Rey, Whitman, Mahoney, Flechter, Hokanson and others to deprive the Rondigo plaintiffs of their constitutional rights to due process and equal protection under the Fourteenth Amendment of the United States Constitution and to unfairly cause a wrongful taking of the Rondigo plaintiffs' property in violation of their rights under the Seventh Amendment of the United States Constitution.

      \*\*\*

      98. On August 24, 2006, defendant Whitman acknowledged that the Rondigo plaintiffs had properly received MAEAP verification for the farm's cropping system.

      99. On August 25, 2006, defendant Seidel ordered a joint inspection of the Rondigo site, without any evidence to support such an inspection, and without any referral of the farm to the MDEQ by the MDA, as set forth by defendant Whitman in his April 25, 2006 letter.

      100. Defendant Seidel took this action solely to harass and vex plaintiffs unlawfully, and to violate their rights to procedural due process, substantive due process and equal protection under the laws.

      101. Defendant Seidel conspired with defendants Richmond, Fuerstenau, Gerhardt, Judith Rey, John Rey, Whitman, Mahoney, Flechter and others to violate plaintiffs' rights to procedural due process, substantive due process and equal protection under the laws and to commit acts which have resulted in an unconstitutional taking of the Rondigo plaintiffs' property, and unlawfully to vex and harass the Rondigo plaintiffs.

      102. On October 18, 2006, Joseph Kelpinski of the MDA conducted a "review of the nutrient management practices" at plaintiff Rondigo's farm, allegedly based on an unspecified environmental complaint which the MDA had received regarding excessive odors from yard clippings.

103. On October 13, 2006, defendant Steven Mahoney, a Research Analyst with the MDA, sent email correspondence to Mr. Kelpinski, which stated, "Wayne asked me to assist you with questions to ask about her alleged composting operation," and then listed almost 50 questions, none of which were ever asked of any other farming operation which utilizes on-farm composting (a copy of this email correspondence is attached hereto as Exhibit 10).

104. On October 30, 2006, defendant Whitman wrote to the Rondigo plaintiffs, advising them of Mr. Kelpinski's inspection on October 18, 2006 and Mr. Kelpinski's finding that there were no excessive odors at the Rondigo site and "no apparent environmental problems associated with the current placement or management of the yard clippings on your property" (a copy of this letter is attached hereto as Exhibit 11).

105. Defendant Whitman intentionally did not include Mr. Kelpinski's report (which the Rondigo plaintiffs were able to obtain only through a Freedom of Information Act ("FOIA") request to the MDEQ, and which the MDA failed to produce in response to a FOIA request to them), which went much further than defendant Whitman's letter and found that there was no evidence of non-compliance at the Rondigo site (a copy of Mr. Kelpinski's report is attached hereto as Exhibit 12).

***

109. Defendant Jared Slanec was the complainant who called defendant Whitman on October 10, 2007 to submit the unsubstantiated and meritless odor complaint to the MDA in October, 2006.

110. Defendant Whitman has admitted under oath that he did nothing to ascertain whether defendant Jared Slanec's complaint was legitimate, or whether it was motivated at least in part by the fact that the entity for which defendant Jared Slanec is the spokesperson, defendant FTCC, had recently had its complaint against plaintiff Rondigo dismissed on summary disposition by the Macomb County Circuit Court and had had its appeal dismissed by the Michigan Court of Appeals, two days before defendant Jared Slanec filed his unsupported complaint about plaintiff Rondigo with the MDA.

111. Defendant Whitman has admitted under oath that defendant Jared Slanec advised him, at the time he made the complaint that he could smell odors from the Rondigo site at his home, that he lived approximately a mile from the Rondigo site.

- 13 -

112. Defendant Whitman admitted under oath at a hearing on October 31, 2006, the day after he drafted the October 30, 2006 letter (Exhibit 10), that the MDA has never inspected any other farm in Richmond Township to determine if it complies with the GAAMPs.

113. Defendant Whitman admitted under oath at a hearing on October 31, 2006, which was held on the day after he drafted the October 30, 2006 letter (Exhibit 11), that no farm in Richmond Township other than plaintiff Rondigo has had to submit and have on file at the MDA a compost operations plan or nutrient management plan.

114. Defendants Whitman and Jared Slanec conspired together to take unlawful and unconstitutional action against the Rondigo plaintiffs prior to defendant Whitman sending his October 30, 2006 letter (Exhibit 11) to the Rondigo plaintiffs.

                    ***

121. On October 18, 2006, defendant Annette Norman submitted an unsubstantiated and meritless odor complaint to the MDEQ and the MDA.

122. On November 9, 2006, defendant Annette Norman submitted an unsubstantiated and meritless odor complaint to the MDEQ and the MDA.

123. On November 10, 2006, defendant Michael Lock submitted an unsubstantiated and meritless odor complaint to the MDA.

124. On November 10, 2006, defendant Michael Sylvestry submitted an unsubstantiated and meritless odor complaint to the MDA.

125. On November 10, 2006, defendant Thomas Mackley submitted an unsubstantiated and meritless odor complaint to the MDA.

126. On November 13, 2006, defendant Thomas Mackley submitted an unsubstantiated and meritless odor complaint to the MDA.

127. On November 20, 2006, defendant Annette Norman submitted an unsubstantiated and meritless odor complaint to the MDEQ and the MDA.

128. On November 20, 2006, defendant Michael Lock submitted an unsubstantiated and meritless odor complaint to the MDA.

                    - 14 -

129. On November 30, 2006, defendant Annette Norman submitted an unsubstantiated and meritless odor complaint to the MDEQ and the MDA.

130. Even though Mr. Kelpinski reported that there was no evidence to support the odor violation in October, 2006 and it should have been dismissed, defendant Whitman falsely advised Christopher Ethridge of the Air Quality Division of the MDEQ on November 9, 2006 that "we have an open odor complaint" (a copy of this email correspondence is attached hereto as Exhibit 16).

131. On November 17, 2006, defendant Mahoney conducted a "follow-up" inspection at plaintiff Rondigo's farm, allegedly because of odor complaints from residents. Defendant Mahoney was forced to admit in his report that there were no odors, again contrary to that which the residents had stated in their alleged complaints to his department.

132. On that same day, November 17, 2006, on which defendant Mahoney could not find any objectionable odors at the Rondigo site, defendant Mahoney met with defendant Fuerstenau - who was action both on behalf of defendant Richmond and personally - and with defendants Sitek, Thomas Mackley and Paula Mackley, and conspired with them to create a plan to claim that the Rondigo plaintiffs had no Right to Farm Act protection and should be immediately referred to the MDEQ for what would prosecution on a non-existent claim, based on defendant Mahoney's own findings.

　　　　\*\*\*

137. In addition, by February 13, 2007, because of the wrongful actions of defendants Whitman, Mahoney, Seidel, Flechtner, Hokanson and others, the Rondigo farm was subjected to two further inspections without cause by the MDA and its personnel, an inspection without cause by the MDEQ, and a joint inspection of the farm without cause by both the MDA and the MDEQ, all of which resulted in findings that there were no violations.

　　　　\*\*\*

144. Defendant Seidel had ordered yet an unwarranted inspection of the Rondigo site on or before December 21, 2006, which Tracy Kecskemeti of the MDEQ, Water Bureau, questioned, stating "I'm not [sure] we need to go. Last time we were out there, we didn't identify any problems...." In order to convince others in the MDEQ to go out on the inspection, defendant Seidel falsely reported that there had been "many complaints" since October 18, 2006, the date of the last inspection (a copy of this email correspondence exchange is attached hereto as Exhibit 23).

- 15 -

145. Notes taken by defendant Hokanson of a meeting on February 1, 2007 among defendants Seidel, Whitman, Mahoney and Hokanson, as well as Tracy Kecskemeti and Hae-Jin Yoon of the MDEQ Water Bureau, Michelle Crook and Jim Johnson of the MDA and Jim Sygo substantiate the unlawful and constitutional conspiracy against the Rondigo plaintiffs (a copy of these notes is attached hereto as Exhibit 24).

146. Defendant Seidel admitted at that meeting, contrary to her public statements about 400 complaints against another operation owned by plaintiff Dolores Michaels, that "we haven't had success w/901 [violations] @ KOTW [owned by plaintiff Dolores Michaels] and Detroit [owned by plaintiff Renee Michaels]" (Exhibit 24).

147. On February 8, 2007, defendant Devon Slanec wrote email correspondence and published it to third parties, including Ken DeBeaussaert, making statements about the Rondigo plaintiffs which were false and defamatory, including but not limited to that the Rondigo plaintiffs were dumping "raw compost material" and creating "an environmental disaster" and demanding that plaintiff Rondigo be shut down (a copy of this email correspondence is attached hereto as Exhibit 25).

                                        ***

157. Despite the fact that defendant FTCC was not present through a representative or counsel at the conference in Judge Foster's chambers among Judge Foster and counsel for defendant Richmond, plaintiff Rondigo and defendants Whitman and Mahoney, defendant FTCC was advised by someone who neither the judge nor the Rondigo plaintiffs or their counsel as to exactly what had occurred at that conference, and defendant FTCC thereafter issued a press release commemorating those events (a copy of the press release is attached hereto as Exhibit 31).

158. During April or May, 2007, defendant Mahoney contacted Mike Pratt, a farmer from whom plaintiff Rondigo had leased land in Armada Township as part of its compost operations plan and who is identified by name in that compost operations plan, and advised him that the compost would pollute the ground itself, and he would not be able to grow any crops on the land.

159. Additionally, even though compost operations plans are exempt from the requirements of the Freedom of Information Act (FOIA), MCL 15.231 et seq., MSA 4.1801(4) et seq., defendants Richmond, Fuerstenau, Whitman and Mahoney disseminated Rondigo's compost operations plan, which contained

- 16 -

identifying information about Mike Pratt, to members of defendant FTCC and others.

160. Members of defendant FTCC and others used this improperly disseminated information to threaten Mr. Pratt and his children with adverse action and negative consequences should he continue to lease land to the Rondigo plaintiffs.

***

162. Despite this opinion, a copy of which the Rondigo plaintiffs timely provided to defendants Mahoney and Whitman, on May 17, 2007, defendant Whitman sent a letter to the Rondigo plaintiffs, stating that since plaintiff Rondigo had not moved the leaves by May 11, 2007 (the date on which the Macomb County Circuit Court mailed the opinion temporarily lifting the injunction for 14 days to counsel for plaintiff Rondigo), the "file" on some alleged "environmental complaint" was being transferred to the MDEQ for enforcement action (a copy of this letter is attached hereto as Exhibit 33).

163. Defendant Whitman never identified the alleged "environmental complaint" or provided plaintiffs with any notice of the alleged charges which they allegedly faced or the identity of the complainant.

***

178. On May 17, 2007, defendants FTCC and Jared Slanec published a press release to third parties which contained statements which were false and defamatory to the Rondigo plaintiffs, including but not limited to statements that the Rondigo plaintiffs would be operating "a commercial composting dump," that they "improperly conducted composting," that they "adversely affect[ed] the environment," that they "destroy[ed] healthy neighborhoods" and that they would have trucks filled with "animal carcasses and garbage" dump these things on Rondigo's site (a copy of the press release is attached hereto as Exhibit 35).

179. On May 31, 2007, the Rondigo plaintiffs were advised that defendant Seidel had ordered her staff to conduct an inspection at the Rondigo site on June 18, 2007, even though she knew that there were no environmental issues or legitimate complaints regarding that site, and that there had been no activity on that site other than the farming which had existed for years.

180. On June 21, 2007, Tracy Kecskemeti documented the MDEQ inspection which took place on plaintiff Rondigo's site, and in that memorandum, set forth that there were no violations at the site (a copy of the Interoffice Communication, dated June 21, 2007, is attached hereto as Exhibit 36).

What is missing from the above quoted allegations, is a contention that the FTCC or the Homeowner Defendants had some sort of ulterior motive (*i.e.*, merely to harass Plaintiffs) in filing the lawsuit against Rondigo in the Macomb County Circuit Court.  The fact that the FTCC's Macomb County lawsuit was dismissed does not, *ipso facto*, make that lawsuit "objectively baseless" or a "sham" for purposes of the *Noerr-Pennington* doctrine.  Quite simply, there are no allegations sufficient to establish an inference that the FTCC's lawsuit was objectively baseless.  Rather, the Macomb County Circuit Court dismissed the FTCC's lawsuit on technical grounds (*i.e.* lack of standing) ruling in part as follows:

> The Court finds that Plaintiff Four Township Citizens Coalition *lacks standing at this juncture* to pursue this cause of action against Defendant Rondigo, L.L.C.  FTCC has not provided evidence that conclusively demonstrates that Rondigo has commenced or intends to commence a commercial composting operation at its Richmond Township property and as such, no injury in fact has occurred that can be addressed by this Court.  *The Court's ruling, however, is in reliance on the statements made to this Court by Defendant indicating that it was not intending to commence commercial composting operations at its Richmond Township Property.*  If Defendant has purposely misled this Court [it will not] hesitate to remedy the situation with an injunction and order to rip out the facilities, including the driveway, at Defendant's cost.

*Four Township Citizens Coalition v. Rondigo LLC*, Case No. 275471, 2008 WL 2357667 (Mich. App. June 10, 2008) (emphasis added).

There is no indication that from the outset the FTCC lacked a "reasonable basis for believing that [its] claim of standing might be [not] accepted by the court."  *In re Burlington Northern, Inc.*, 822 F.2d 518, 530 (5th Cir. 1987).

In sum, the "sham" exception does not apply in this case, even though the FTCC did not prevail in the underlying state court action against Plaintiffs.  Plaintiffs' allegations do not refute the fact that the actions by the FTCC and the Homeowner Defendants were undertaken to accomplish the goal improving and maintaining the quality of the environment where they own

- 18 -

homes.  Plaintiffs' Amended Complaint does not allege any specific actions by the Homeowner Defendants to the FTCC suggesting they were merely interested in harassing Plaintiffs, as opposed to achieving a specific goal.  The reasoning of *Aknin*, 404 F.Supp. at 1153, *supra,* is directly applicable to this matter – "[t]o permit maintenance of this type of civil rights lawsuit against a private individual would…have an unfortunate and unjust chilling effect upon the exercise by members of the public of their First Amendment right to complain about a public nuisance."  Plaintiffs' suit against the FTCC and the Homeowner Defendants is precisely the type of litigation that the *Noerr-Pennington* doctrine was designed to protect against.  As such, this Magistrate Judge finds that the FTCC's and the Homeowner Defendants' actions are protected by the *Noerr-Pennington* doctrine and, as a result, Plaintiffs' claims against these Defendants should be dismissed, with prejudice.

## V.  CONCLUSION

In light of the foregoing, the undersigned **RECOMMENDS** that the FTCC and the Homeowner Defendants' motion for partial summary judgment/motion to dismiss (Dkt. No. 122) be **GRANTED**.  Since I find that all of Plaintiff claims against these Defendants are barred by the *Noerr-Pennington* doctrine – and since all of Plaintiffs' claims against the governmental Defendants have already been dismissed – Plaintiffs' Complaint should be dismissed in its entirety and Judgment should be entered in favor of all Defendants.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

- 19 -

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: February 6, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, February 6, 2012, electronically.*

s/Melody R. Miles
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*

- 20 -