**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RONDIGO, LLC, et al.,

           Plaintiffs,         No. 08-cv-10432
                                 Hon. Gerald E. Rosen

v.

TOWNSHIP OF RICHMOND, MICHIGAN,
et al.,

           Defendants.
_____/

**OPINION AND ORDER ADPOPTING THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON ALTERNATE GROUNDS**

**I. INTRODUCTION**

This case involves a dispute pitting two farmers and their company ("Plaintiffs") against a group of neighbors and local government officials ("Defendants") who oppose a proposed composting business on Plaintiffs' land. After encountering various forms of resistance from local officials, neighbors, and a non-profit coalition of neighbors, Plaintiffs filed this suit alleging a variety of claims. All government actors have been dismissed from this suit; the only remaining Defendants are private citizens and an organization formed by Plaintiffs' neighbors. The remaining Defendants moved for dismissal or summary judgment on October 16, 2009. The Court referred the motion to Magistrate Judge Mark Randon on November 6, 2009. The Magistrate Judge issued his report and recommendation on February 6, 2012, recommending dismissal of all

remaining claims. Plaintiffs timely objected. Having reviewed the report and recommendation, Plaintiffs' objections, and the record as a whole, the Court finds that the legal arguments are sufficiently addressed and that oral argument would not assist in the resolution of this matter. Accordingly, the Court will decide this matter "on the briefs." *See* L.R. 7.1(f)(2).

## II. FACTUAL BACKGROUND

Plaintiffs Dolores Michaels, Renee Michaels, and Rondigo, LLC operate a seventy acre farm in Richmond Township, Michigan. In addition to tending crops, Plaintiffs wish to use their farm for composting activities: accepting organic waste for a fee and applying the compost as fertilizer to their own fields. Defendants are a series of individuals and entities, both private and governmental, who have at one point or another objected to Plaintiffs' farming activities or subjected Plaintiffs' business to litigation, negative publicity, or regulatory scrutiny. Defendants' conduct includes inspections by regulatory authorities, lobbying of public officials, and a lawsuit that was dismissed for lack of standing. *Four Township Citizens' Coalition v. Rondigo, LLC*, No. 275471, 2008 WL 2357667 (Mich. Ct. App. June 10, 2008).

This lawsuit is the culmination of the parties' quarrel. Plaintiffs' amended complaint, filed on February 5, 2008, alleges the following claims arising out of Defendants' conduct: a claim under 42 U.S.C. § 1983, the unconstitutionality of a local ordinance, federal conspiracy claims under 42 U.S.C. § 1985(3), knowing failure to prevent violation of Plaintiffs' rights under 42 U.S.C. § 1986, mail and wire fraud

2

conspiracies, and defamation. The governmental defendants in this case were previously dismissed as a result of a motion to dismiss and an interlocutory appeal. *See Rondigo, LLC v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011). The only remaining Defendants are private homeowners and The Four Township Citizens' Coalition, Inc. ("FTCC"), a group established by homeowners to oppose Plaintiffs' composting activities.

The remaining Defendants moved for dismissal or summary judgment, and the Court referred their motion to Magistrate Judge Randon. The Magistrate Judge recommended that the Court dismiss all of Plaintiffs' claims based on *Noerr-Pennington* immunity, a doctrine that protects the exercise of First Amendment rights against certain kinds of civil suit. Plaintiffs timely objected to the Magistrate Judge's report and recommendation. For the reasons explained below, the Court will accept the Magistrate Judge's report and recommendation on alternate grounds and will dismiss Plaintiffs' remaining claims.

### III. ANALYSIS

A.    **Reviewing the Magistrate Judge's Report and Recommendation**

  1.    Standard of Review

When a party properly objects to the report and recommendation of a Magistrate Judge, the pertinent rule requires the Court to conduct a *de novo* review. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Here, the Magistrate Judge recommended that the Court dismiss Plaintiffs' remaining claims under the *Noerr-Pennington* doctrine. Plaintiffs timely objected.

    2.    <u>*Noerr-Pennington* Doctrine</u>

The *Noerr-Pennington* doctrine -- named for the two Supreme Court cases from which it originated[1] -- originally protected parties from antitrust liability for organizing to exercise their First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend. I; *Knology, Inc. v. Insight Comms. Co.*, 393 F.3d 656, 658 (6th Cir. 2004). In *Noerr*, a group of railroad companies lobbied for legislation that would impede the ability of trucking companies to compete for freight business. *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 129 (1961). The trucking companies sued under the Sherman Act, but the Supreme Court held that "the Sherman Act does not prohibit . . . persons from associating . . . in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Id.* at 136-37.

Courts have since expanded *Noerr-Pennington* immunity to other contexts as well. *See, e.g.*, *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002) (applying *Noerr-Pennington* within the context of labor law). "*Noerr-Pennington* immunity from antitrust laws extends to petitioning the courts as well." *Baltimore Scrap Corp. v. David J. Joseph Co.*,

---

[1] *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

4

237 F. 3d 394, 399 (4th Cir. 2001) (citing *California Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)). The doctrine has also grown to shield individuals from liability under § 1983 "for actions taken when petitioning authorities to take official action, even where the petitioning activity has the intent or effect of depriving another of property interests, except under 'very limited circumstances.'" *Knology*, 393 F.3d at 658 (quoting *Eaton v. Newport Bd. of Ed.*, 975 F.2d 292, 298 (6th Cir. 1992)). Dismissal is appropriate when *Noerr-Pennington* immunity applies.

*Noerr-Pennington* immunity is not without limit, however. The doctrine is subject to a limited exception referred to as the sham exception. It "encompasses situations in which persons use the governmental <u>process</u> -- as opposed to the <u>outcome</u> of that process -- as an anticompetitive weapon. . . . A 'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action at all," as opposed to "one who genuinely seeks to achieve his governmental result, but does so <u>through improper means</u>." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991) (quotations omitted) (emphasis original). An example of sham conduct is "filing . . . frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *Id.* The sham exception thus turns on whether a *Noerr-Pennington* defendant engaged in objectively baseless activity in order to vex and harass the opposing party.

The Supreme Court has articulated a two-part test for determining when the sham exception applies:

5

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere <u>directly</u> with the business relationships of a competitor, through the use of the governmental <u>process</u> -- as opposed to the <u>outcome</u> of that process -- as an anticompetitive weapon. This two-tiered process requires the plaintiff to disprove the challenged lawsuit's <u>legal</u> viability before the court will entertain evidence of the suit's <u>economic</u> viability.

*Prof. Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993) (quotations and footnote omitted) (emphasis original). Evidence of anticompetitive intent does not render otherwise legitimate activity a sham without more. *Id.* at 59. "[N]either *Noerr* immunity nor its sham exception turns on subjective intent alone." *Id.* Rather, a party claiming that the sham exception applies must also demonstrate that the petitioning conduct had no merit, *i.e.*, that it was objectively baseless. *Id.*; *Huron Valley Hosp., Inc. v. City of Pontiac*, 650 F. Supp. 1325, 1341 (E.D. Mich. 1986)

      3.      <u>The Magistrate Judge's Report and Recommendation</u>

Relying entirely on the *Noerr-Pennington* doctrine, the Magistrate Judge recommended the complete dismissal of Plaintiffs' remaining claims. Specifically, the Magistrate Judge determined that Plaintiffs' complaint lacked both "a contention that the [Defendants] had some sort of ulterior motive (*i.e.*, merely to harass Plaintiffs)" and

6

"allegations sufficient to establish an inference that [Defendants'] lawsuit was objectively baseless."  Having analyzed Plaintiffs' claim, the Court holds that the Magistrate Judge's report and recommendation reaches the correct outcome regarding some of Plaintiffs' claims.  However, the Magistrate Judge's report and recommendation does not completely address all the issues presented by Defendants' motion.

First, the report and recommendation only analyzes the *Noerr-Pennington* doctrine with regard to the lawsuit Defendants filed in Macomb County Circuit Court.  Plaintiffs' claims rely on a host of other factual allegations as well, including but not limited to Defendants' public statements regarding the composting operation and their efforts lobbying public officials to act.  Since some of Plaintiffs' remaining claims depend on these contentions as well, determining the appropriate outcome requires a more comprehensive analysis of Plaintiffs' claims and allegations.

Second, the Court is not convinced that the case law relied upon in the report and recommendation necessarily extends the *Noerr-Pennington* doctrine to all of Plaintiffs' non-§ 1983 claims.  The Court was unable to find precedent extending *Noerr-Pennington* immunity to claims arising under 42 U.S.C. § 1985(3) and § 1986; *Noerr-Pennington* -- a doctrine protecting the right to petition -- seems entirely inapplicable to Plaintiffs' fraud conspiracy claims; and the cases relied upon to make *Noerr-Pennington* applicable to Plaintiffs' defamation claims do not appear to support the point of law relied upon.[2]

---

[2] The first case, *DirecTV, Inc. v. Milliman*, 02–74829, 2003 WL 23892683 (E.D. Mich. Aug. 23, 2003), contains a section examining the party's defamation claim and a separate section dedicated to analyzing the *Noerr-Pennington* doctrine.  *See* 2003 WL 23892683, at *7-*8.  Of critical importance, a footnote at the beginning of the *Noerr-Pennington*

7

Furthermore, not all of Plaintiffs' defamation claims involve petitioning activity, which is the right the *Noerr-Pennington* doctrine is designed to protect. As such, applying *Noerr-Pennington* to Plaintiffs' entire complaint was not appropriate. For these reasons, the Court will adopt the Magistrate Judge's report and recommendation on alternate grounds.

**B.      Defendants' Motion for Dismissal or Summary Judgment**

Plaintiffs having timely objected to the Magistrate Judge's report and recommendation, the applicable rule requires the Court to conduct a *de novo* review of Defendants' motion. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). As explained below, the Court will dismiss all of Plaintiffs' remaining claims.

1.      Applicable Standards

Rule 12(b)(6) authorizes this Court to dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pleaded factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a

---

section clearly limits the court's analysis of that doctrine to the party's Michigan Consumer Protection Act claim because "every other count in [the defendant's] counter-complaint must be dismissed on other grounds[.]" *Id.* at *7 n.8. While the report and recommendation cites *Milliman* as dismissing the defamation claim under the *Noerr-Pennington* doctrine, the defamation claim was in fact dismissed for failure to state a claim. *Id.* at *7 ("A declaration in an action for libel which fails to show where the alleged libels were published or their contents failed to state a cause of action for libel. Accordingly, Count VII must be dismissed.") (quotations and citations omitted). The second case, *Pennwalt Corp. v. Zenith Labs., Inc.*, 472 F. Supp. 413 (E.D. Mich. 1979), did not involve a defamation claim at all. 472 F. Supp. at 415 ("This is an unfair competition and trademark infringement case.").

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The *Noerr-Pennington* doctrine and the sham exception are described in detail at Part III.A.2, *supra*, and incorporated here.

   2. The *Noerr-Pennington* doctrine bars Plaintiffs' § 1983 claims.

In asserting a claim for the violation of constitutional rights under 42 U.S.C. § 1983, Plaintiffs rely on a variety of conduct. Plaintiffs claim that their constitutional rights were violated when Defendants filed suit against their farm, as well as when Defendants petitioned government officials to take action against Plaintiffs' farm. As discussed below, Plaintiffs' § 1983 claims are barred by the *Noerr-Pennington* doctrine becuase neither Defendants' failed lawsuit nor the petitioning of public officials falls within the sham exception to the *Noerr-Pennington* doctrine.

Defendants' lawsuit, filed in Macomb County Circuit Court and ultimately dismissed for lack of standing, *Four Township Citizens' Coalition v. Rondigo, LLC*, No. 275471, 2008 WL 2357667 (Mich. Ct. App. June 10, 2008), does not fall within the sham exception to the *Noerr-Pennington* doctrine because Plaintiffs have failed to allege facts or present argumentation suggesting the suit was objectively baseless, a prerequisite for

9

applying the sham exception. *Prof. Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993). Plaintiffs' complaint and subsequent briefs are rife with references to "knowing" conduct on the part of Defendants, but without providing any evidence in support of these conclusory statements. (*See, e.g.*, Pls.' Supp. Reply Brief 4.) Furthermore, it appears that Plaintiffs have misconstrued where the burden of proof lies. In arguing that Defendants filed a baseless lawsuit, Plaintiffs assert that "[t]here is no evidence in the record that the actions of the [Defendants] were undertaken to accomplish the goal of improving and maintaining the quality of the environment where they own homes." (*Id.* at 4-5.) However, the burden of proof lies with Plaintiffs: they bear the burden of showing that Defendants' activities fall within the sham exception. *Huron Valley Hosp., Inc. v. City of Pontiac*, 650 F. Supp. 1325, 1341 (E.D. Mich. 1986) ("The first amendment interests concerned and the case law discussed earlier support placing the evidentiary burden on the . . . plaintiff to prove that the action of the defendant comes within the sham exception to *Noerr-Pennington* in this kind of case.") (quoting *Westmac, Inc. v. Smith*, 797 F.2d 313, 318 (6th Cir.1986)). Having failed to offer evidence suggesting Defendants' suit was either objectively baseless or an abuse of process, dismissal is appropriate.

Regarding Defendants' other efforts at stopping Plaintiffs' on-site composting operation, the Court is aided by analysis from an analogous case, *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292 (6th Cir. 1992). *Eaton* involved the firing of a school principal after the principal made an offensive remark to a co-worker. 975 F.2d at 293. The principal's

firing was at least partially the product of lobbying by the Kentucky Education Association ("KEA"), a group that directed its attention toward the local school board with the aim of unseating the principal. *Id.* at 294-295. The principal sued under § 1983 and won a jury verdict based on the KEA's conduct, but that verdict was reversed by the Sixth Circuit because the KEA's lobbying was unequivocally "protected by the [F]irst [A]mendment." *Id.* at 296.

*Eaton* is important to the Court's analysis here because both *Eaton* and this case involve a group of individuals lobbying public officials to act in a specific way. As in *Eaton*, the conduct alleged by Plaintiffs constitutes legitimate and protected First Amendment petitioning. A review of letters sent by Defendants to public officials does not reveal baselessness or impropriety. The letters instead show concerned individuals lobbying public officials to act, and doing so in good faith. Further, Defendants' subjective motivations are not relevant. *See id.* at 298 ("Under the *Noerr-Pennington* doctrine, liability may not be assessed under § 1983 or the antitrust laws except in very limited circumstances, for actions taken when petitioning authorities to take official action, <u>regardless of the motives of the petitioners</u>, even where the petitioning activity has the intent or effect of depriving another of property interests.") (citation omitted) (emphasis added). No evidence adduced by Plaintiffs suggests that Defendants lobbied against Plaintiffs' farm merely as a form of harassment. It thus appears that Defendants engaged in protected First Amendment conduct when they drew officials' attention to

11

Plaintiffs' farm. Having failed to demonstrate that the sham exception to the *Noerr-Pennington* doctrine applies, Plaintiffs' claims fail.

    3.    <u>Dismissal of Plaintiffs' § 1985(3) and § 1986 claims is appropriate.</u>

Plaintiffs also present claims under 42 U.S.C. § 1985(3), which prohibits conspiracies to violate constitutional rights, and 42 U.S.C. § 1986, which provides a cause of action against individuals who knew about and had the power to stop a § 1985 conspiracy, but failed to do so. 42 U.S.C. §§ 1985(3), 1986. Alleging a claim under § 1985(3) requires that Plaintiffs plead four elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). As part of the second prong, the Supreme Court has held that a conspiracy to violate civil rights requires class-based animus. *Id.* at 834-35. Further, given that § 1986 provides a cause of action for the failure to stop a § 1985 conspiracy, Plaintiffs' § 1986 claim fails if the § 1985 claim is dismissed because a necessary predicate condition -- the civil rights conspiracy -- would be lacking. *See Royal Oak Ent., LLC v. City of Royal Oak, Michigan*, 205 Fed. App'x 389, 399 (6th Cir. 2006) ("Section 1986 liability is derivative of § 1985 liability.").

Here, Plaintiffs' § 1985(3) claim fails because Plaintiffs did not plead a necessary aspect of the second prong: class-based animus. *Carpenters v. Scott*, 463 US 825, 834-35

(1983). Consequently, their § 1986 claim fails as well. In *Carpenters*, the Supreme Court had the opportunity to analyze the language, structure, and history of § 1985(3). 463 U.S. at 830-35. In so doing, the Court reiterated its earlier holding that a § 1985(3) claim requires that racial or class-based animus underlie the conspirators' actions. *Id.* at 835 ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.") (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) (emphasis omitted). Plaintiffs' complaint cursorily mentions that Plaintiffs are women, but no portion of the complaint suggests that the alleged conspiracy was motivated by sex-based animosity. Rather, the entire complaint is focused on Defendants' opposition to Plaintiffs' composting as a matter of environmental and economic concern. More is required to plead a claim under § 1985(3). *Id.* Plaintiffs have thus failed to even plead the elements of a § 1985(3) claim, let alone allege facts in support of such a claim. Accordingly, dismissal of Plaintiffs' § 1985(3) claim is warranted. Fed. R. Civ. P. 12(b)(6). Likewise, having dismissed Plaintiffs' conspiracy claim, dismissal of Plaintiffs' § 1986 claim is also required. *Royal Oak Ent., LLC v. City of Royal Oak, Michigan*, 205 Fed. App'x 389, 399 (6th Cir. 2006).

  4. Wire and Mail Fraud Conspiracies

Plaintiffs also allege civil conspiracies to commit "wire fraud and mail fraud." (Pls.' First. Am. Compl. ¶ 240.) Wire fraud requires establishing "(1) a scheme to defraud, (2) the use of the U.S. Mail for the purpose of executing the scheme, and (3)

13

specific intent to deceive or defraud." *Braxton v. Scottish Guar. Ins. Co.*, No. 184751, 1997 WL 33354534, at *3 (Mich. Ct. App. 1997) (citing *Central Distributors of Beer, Inc v Conn*, 5 F.3d 181, 184 (6th Cir. 1993)). "The elements of wire fraud are (1) a scheme to defraud, (2) the use of an interstate electronic communication in furtherance of the scheme, and (3) specific intent to deceive or defraud." *Id.* Nothing in Plaintiffs' complaint even remotely pertains to mail or wire fraud conspiracies. Indeed, every mention of 'conspire' or 'conspiracy' in the complaint involves conspiracies to commit constitutional violations, which are dealt with under 42 U.S.C. § 1985(3). *See* Part III.B.3. Having failed to proffer any pertinent allegations, dismissal is appropriate. Fed. R. Civ. P. 12(b)(6).

     5.     <u>Dismissal Plaintiffs' defamation claims is appropriate.</u>

Plaintiffs also allege a series of defamation claims arising out of statements made by Defendants in the course of opposing Plaintiffs' farm. "A communication is defamatory if, considering all the circumstances, it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ireland v. Edwards*, 584 N.W.2d 632, 638-39 (Mich. Ct. App. 1998). This determination is made using an objective, reasonable-person standard. *Siddiqui v. Gen. Motors Co.*, No. 302446, 2012 WL 335680, at *4 (Mich. Ct. App. Feb. 2, 2012). A for-profit business may assert a defamation claim if the aforementioned elements are met in addition to showing that the defamatory statement prejudices the business or deters customers from associating with it. *Siddiqui v. Gen.*

*Motors Co.*, No. 302446, 2012 WL 335680, at \*6 (Mich. Ct. App. Feb. 2, 2012) (citation omitted).

"Not all defamatory statements are actionable. If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Ireland*, 584 N.W.2d at 636 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Garvelink v. Detroit News*, 522 N.W.2d 883, 886 (1994)). The Court thus must evaluate Defendant's speech in context to determine whether a particular communication states actual facts about Plaintiff, as opposed to mere opinion or hyperbole. *See Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 13-14 (1970); *Ireland*, 584 N.W.2d at 638. Finally, "[a] party alleging defamation must specify which statements are false and defamatory in order to place the defendant on notice to defend the action." *WHIC-USA, Inc. v. Carlisle*, No. 262071, 2005 WL 1959503, at \*2 (Mich. Ct. App. Aug. 16, 2005).

While the Sixth Circuit has not considered the issue, courts in Michigan and elsewhere have held that *Noerr-Pennington* immunity applies to defamation claims involving protected speech: "defamation -- injury to a person's good name -- is actionable as the result of petitioning the government only where the petitioning was actually a 'sham.'" *J & J Constr. Co. v. Bricklayers and Allied Craftsmen*, 631 N.W.2d 42, 47 (Mich. Ct. App. 2001). *See also In re Am. Continental Corp./Lincoln Savings & Loan Sec. Lit.*, 102 F.3d 1524, 1538 n.15 (9th Cir. 1996) (collecting cases), *rev'd on other grounds*, 523 U.S. 26 (1996); *In re IBP Confidential Business Docs. Lit.*, 755 F.2d

15

1300, 1312-1313 (8th Cir. 1985) (discussing contours of *Noerr-Pennington* doctrine as applied to defamation and other state law claims); *Experience Hendrix, L.L.C. v. HendrixLicensing.com, LTD*, 766 F. Supp. 2d 1122, 1143-46 (W.D. Wash. 2011) (applying *Noerr-Pennington* doctrine to state law claims, including defamation); *Caixa Geral de Depositos, S.A. v. Jacinto Rodrigues*, No. 03-746, 2005 WL 1541055, at *10-*11 (D.N.J. June 30, 2005) (applying *Noerr-Pennington* to defamation claim). *Noerr-Pennington* does not provide absolute immunity to First Amendment petitioning activity, but it does protect activity falling outside of the sham exception. *J & J Constr. Co. v. Bricklayers and Allied Craftsmen*, 631 N.W.2d 42, 47 (Mich. Ct. App. 2001); *Azzar v. Primebank*, 499 N.W.2d 793, 797 (Mich. Ct. App. 1993). By extension, conduct that does not constitute petitioning under the First Amendment does not qualify for *Noerr-Pennington* protection.

The conduct alleged in paragraphs eighty-three, ninety-two, ninety-five, ninety-six, and ninety-seven sounds in defamation;[3] however, these paragraphs either claim defamation against governmental actors or claim defamation where private parties were petitioning government officials. Since all governmental parties were previously dismissed, *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011), the Court need only determine whether the remaining allegations fall within the sham exception to the *Noerr-Pennington* doctrine. Here, as with the Court's prior analysis, nothing adduced thus far suggests that Defendants' petitioning was objectively baseless

---

[3] These paragraphs contain allegations involving the failed state court suit filed against Plaintiffs (paragraphs eighty-three and ninety-two) and letters written to public officials (paragraphs ninety-five through ninety-seven).

or motivated by a desire to harass Plaintiffs and impede their business. Defendants engaged in a concerted effort to stop Plaintiffs from operating a composting business, but they did so in good faith and with a reasonable expectation of success. Plaintiffs have not identified any evidence suggesting otherwise. As such, Defendants' petitioning falls within the *Noerr-Pennington* doctrine and dismissal is appropriate.[4]

Paragraphs 84 and 178 are the only instances where Plaintiffs pled defamation against non-governmental parties in a non-petitioning context. In paragraph eighty-four, Defendant George Haddad is alleged to have made two statements amounting to defamation in a newspaper article about the controversy over Plaintiffs' farm. Since these statements were made to a newspaper reporting on the issue, they are not properly characterized as petitioning within the First Amendment. Paragraph 178 involves statements purportedly contained in a press release. The issuance of a press release does not involve lobbying public officials to take a particular action either, so it also does not

---

[4] In the alternative, paragraphs ninety-two, ninety-five, and ninety-six each attempt to allege defamation claims, but without identifying which statements Plaintiffs claim were defamatory. Merely attaching correspondence and claiming defamation is insufficient. "A party alleging defamation must specify which statements are false and defamatory in order to place the defendant on notice to defend the action." *WHIC-USA, Inc. v. Carlisle*, No. 262071, 2005 WL 1959503, at *2 (Mich. Ct. App. Aug. 16, 2005). In *Royal Palace Homes, Inc. v. Channel 7 of Detroit, Inc.*, 495 N.W.2d 392 (Mich. Ct. App. 1992), the court considered the question of which party bears the burden of pleading specific defamatory statements. In that case, the plaintiffs alleged defamation and merely attached transcripts purportedly containing defamatory statements. *Royal Palace Homes*, 495 N.W.2d at 396. The court's holding applies here as well: "Defendants do not bear the burden of discerning their potential liability from these [documents]. Plaintiffs must plead precisely the statements about which they complain." *Id.* Having failed to so plead, dismissal is appropriate. Fed. R. Civ. P. 12(b)(6).

qualify as petitioning. Accordingly, the *Noerr-Pennington* doctrine does not apply to these allegations.

Nevertheless, the conduct alleged in paragraph eighty-four does not constitute actionable defamation because Haddad did not state specific facts about Plaintiffs. *Ireland*, 584 N.W.2d at 636 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Garvelink v. Detroit News*, 522 N.W.2d 883, 886 (1994)). Haddad purportedly stated that Plaintiffs' composting operation would "adversely affect his property and that of his neighbors" and also claimed that Plaintiffs are "playing the game" and not playing by "the rules." Neither statement is actionable because neither statement refers to particular facts about Plaintiffs; Haddad has instead merely expressed his opinion by speculating on subjective matters. *Ireland*, 584 N.W.2d at 637. The composting operation was merely proposed, so any effect it might have had is purely conjectural. Further, "playing the game" and disobeying "the rules" are subjective statements of opinion. References to "the game" and "the rules" are necessarily vague and doubtless mean different things to different people. *Hantz Group, Inc. v. Haney*, No. 292954, 2010 WL 4864812, at *6 (Mich. Ct. App. Nov. 30, 2010) (citing Ireland, 584 N.W.2d at 637). Therefore, dismissal is appropriate. Fed. R. Civ. P. 12(b)(6).

Paragraph 178 alleges multiple defamation claims against the FTCC and Jared Slanec based on a press release purportedly distributed to third parties. Defendants allegedly referred to Plaintiffs' operation as a "commercial composting dump" containing "animal carcasses and garbage," and said that Plaintiffs would "improperly conduct

18

composting," "adversely affect the environment," and "destroy healthy neighborhoods". Despite indicating that the press release was included among Plaintiffs' exhibits, the Court could not locate it. Nevertheless, it is clear that these statements are not defamatory and dismissal is appropriate.

Referring to Plaintiffs' operation as a "commercial composting dump" is not defamatory because it is entirely accurate: a site that receives the waste of others is literally a dump.[5] While the term is capable of a pejorative meaning, it does not appear from the pleadings that Plaintiffs' operation was referred to as a dump for any reason other than the fact that clients in fact would dump their waste on Plaintiffs' property for a fee; such was the nature of Plaintiffs' intended composting business. The same is true regarding Defendants' alleged reference to "animal carcasses and garbage". Composting sites -- as well as trash dumps generally -- accept garbage, which includes any number of organic substances. Nothing in the pleadings suggests otherwise. Accordingly, it does not appear that either statement is capable of defamatory meaning because neither statement tends to harm Plaintiffs' reputation. *Ireland v. Edwards*, 584 N.W.2d 632, 638-39 (Mich. Ct. App. 1998).

The remaining three statements do not qualify as defamation because they are subjective expressions of opinion. A statement that describes a composting operation as "improperly" conducted is not amenable to a single specific meaning. *Id.*, 584 N.W.2d at 637. Further, speculating as to the effect of Plaintiffs' composting -- on the environment

---

[5] A dump is "an accumulation of refuse or other discarded materials; a place where such materials are dumped." Webster's Third New International Dictionary (Unabridged 1988), 701.

19

generally and Defendants' neighborhood specifically -- is a matter of subjective opinion. *Id.* (contrasting statements referring to "an objectively verifiable event" with "a subjective assertion"). As such, these statements are not actionable as defamation. Therefore, it appears that dismissal is appropriate, since Plaintiffs have failed to plead a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court holds that dismissal is appropriate as to all of Plaintiffs' claims. Therefore,

IT IS HEREBY ORDERED that the Magistrate Judge's report and recommendation [Dkt. #146] is ADOPTED, in accord with the above opinion.

IT IS FURTHER ORDERED that Defendants' motion for partial summary judgment [Dkt. #122] is GRANTED, in accord with the reasoning above.

            s/Gerald E. Rosen
            Chief Judge, United States District Court

Dated: March 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2012, by electronic and/or ordinary mail.

            s/Ruth A.Gunther
            Case Manager
             (313) 234-5137